UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRACY L.,<br><br>                           Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>                          Defendant. | CASE NO. C19-0761-MAT<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1] She has a GED, and has worked as a cashier and waitress. (AR 271.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

Plaintiff applied for SSI in February 2013. (AR 232-40.) That application was denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (AR 156-59, 166-79.)

In August 2014, ALJ Laura Valente held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 67-97.) In October 2014, the ALJ issued a decision finding Plaintiff not disabled. (AR 14-25.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on March 23, 2016 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed this final decision of the Commissioner to this Court, which reversed the ALJ's decision and remanded the matter for further administrative proceedings. (AR 638-48.) On remand, the ALJ held hearings (AR 565-603) and subsequently found Plaintiff not disabled. (AR 534-51.) Plaintiff now seeks judicial review of that decision.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since February 25, 2013, the application date. (AR 537.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's spinal impairment(s), fibromyalgia, myoneural disorder and/or upper extremity neuropathy, obesity, organic brain disorder, affective disorder(s) (including schizoaffective disorder), anxiety disorder(s), and substance use disorder(s). (AR 537-38.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found

that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 538-40.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work with additional limitations: she can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. She can frequently climb ramps and stairs. She can occasionally reach overhead with her left upper extremity. She can frequently handle and finger bilaterally. She must avoid concentrated exposure to vibration, extreme cold, and hazards. She can understand, remember, and carry out simple, repetitive tasks. She can sustain concentration and pace in two-hour increments for such tasks. She can have occasional superficial contact with the general public. She is able to work in the same room with an unlimited number of co-workers but she should not work in coordination with them. She can have frequent superficial contact with co-workers. She can interact with supervisors occasionally and has the ability to respond appropriately to supervisor criticism. She can adapt to changes as would be required for simple, repetitive tasks. With these restrictions, she can sustain an eight-hour workday with sustained attendance and punctuality. (AR 540.)

Plaintiff has no past relevant work (AR 550), and thus the ALJ proceeded to step five, where the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found that Plaintiff was capable of performing representative occupations such as marker and housekeeping cleaner. (AR 550-51.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a

whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) assessing the record via failing to comply with the prior court remand order and erroneously interpreting the record as a whole, (2) assessing her RFC, and (3) relying on VE testimony at step five that is inconsistent with the Dictionary of Occupational Titles (DOT). The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Court remand order

As noted above, the U.S. District Court for the Western District of Washington reversed the previous ALJ decision and remanded for further proceedings. The court instructed the ALJ to reevaluate the step-two findings to determine whether fibromyalgia was a severe impairment, reevaluate the medical record, reevaluate the RFC, and proceed to steps four and/or five as necessary. (AR 648.) Plaintiff argues that the ALJ failed to comply with this remand order and/or erred in reevaluating the medical record for several reasons.

First, Plaintiff argues that because the ALJ found on remand that fibromyalgia was a severe impairment at step two, "she was required to credit as true the claimant's allegations regarding her limitations." Dkt. 14 at 4. Plaintiff cites no authority for this proposition and the Court is aware of none. On reply, Plaintiff clarified that she meant by this statement that the ALJ had failed to provide legally sufficient reasons to discount Plaintiff's testimony, and thus Plaintiff's allegations

should have been credited by the ALJ. Dkt. 16 at 2. This argument is non-sensical: the credit-as-true doctrine applies to courts, not ALJs, and it is not triggered by a step-two finding. *See, e.g.*, *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014).

Plaintiff goes on to argue that the ALJ failed to comply with the court's remand order because although she found fibromyalgia to be a severe impairment at step two, she did not consider fibromyalgia "singularly or in combination with [Plaintiff's] other impairments" and discounted all of Plaintiff's subjective complaints. Dkt. 14 at 5. To the extent that this is intended to be a step-three challenge, Plaintiff has failed to explain how the ALJ failed to consider fibromyalgia at step three. Fibromyalgia is not a listed impairment, but the ALJ explicitly found that Plaintiff's physical impairments did not met or equal Listings 1.04, 11.14, or 14.09 (AR 538), and Plaintiff has not referenced those findings or explained why they are inadequate.

Furthermore, that the ALJ discounted Plaintiff's subjective complaints is not necessarily erroneous, provided that the ALJ gave legally sufficient reasons for doing so. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Plaintiff suggests that the ALJ's findings regarding her testimony consist of merely "conclusory statements often with no citations to any evidence in the record[.]" Dkt. 14 at 5-6. This contention is unfounded: the ALJ's findings regarding Plaintiff's allegations span seven pages, with no lack of citations to the record. (AR 541-548.) Again, Plaintiff has not identified any particular finding that she contends lacks specificity or the support of substantial evidence, and thus has failed to meet her burden to establish error in the ALJ's assessment of her testimony.

Next, Plaintiff argues that the ALJ violated the court remand order by relying on her prior decision, which had been vacated. Dkt. 14 at 6. Plaintiff does not demonstrate that the ALJ relied on her prior decision, however. She contends that the ALJ failed to consider new evidence in the

record (Dkt. 14 at 6), but the ALJ's decision addresses the new evidence at length. (*See* AR 537, 539, 541-43, 545-48.)

Plaintiff also asserts that the ALJ "erred in her step two and three findings regarding the evaluation of obesity and carpal tunnel syndrome" (Dkt. 14 at 6), but does not identify with particularity any error related to obesity. She suggests that the ALJ erred in failing to reference carpal tunnel syndrome at step two, despite her diagnosis of slight carpal tunnel and her allegations of numbness and loss of sensation in her hands. Dkt. 14 at 7. But even if the ALJ erred in failing to include carpal tunnel syndrome as a severe impairment at step two, the error is harmless because the ALJ discussed Plaintiff's alleged hand symptoms and limitations at later points in the decision (AR 541-43). *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Plaintiff goes on to argue that the ALJ erred in finding (AR 542) that she had negative straight leg raises, because the record contains evidence that she had positive straight leg raises on occasion. Dkt. 14 at 8 (citing AR at 404-05, 415-16, 476). But the ALJ did not state that Plaintiff always had negative straight leg raises: the finding cited by Plaintiff indicates that in January 2014, Plaintiff had negative straight leg raises. (AR 542.) Thus, Plaintiff does not establish error in the ALJ's decision by pointing to evidence of positive straight leg raises.

Plaintiff also suggests that the ALJ erred by relying only on the 2013 opinion of a State agency consultant, rather than the "opinion evidence throughout the record[.]" Dkt. 14 at 8. She does not point to any opinion evidence that the ALJ overlooked, however. She notes that her fibromyalgia diagnosis is uncontradicted (Dkt. 14 at 9), but again, the ALJ included fibromyalgia as a severe impairment at step two, and thus it is unclear how Plaintiff's argument relates to an assignment of error.

Plaintiff goes on to provide a lengthy summary of some of the medical evidence, ostensibly

to counter the ALJ's finding that her "primary treatment goals appear to be documentation of her disability and the receipt of controlled substances" (AR 542). *See* Dkt. 14 at 9-13. This section of Plaintiff's brief does not establish that the ALJ's finding is in error, because it does not establish that the ALJ's finding is either unreasonable or not supported by substantial evidence. To the extent that Plaintiff cites this evidence for the purpose of encouraging the Court to reweigh the evidence, the Court declines this invitation.[2] The ALJ cited extensive evidence of Plaintiff's drug-seeking behavior (AR 542-43, 545-46) and Plaintiff has not shown that the ALJ relied on this evidence in error.

Lastly, Plaintiff argues that the ALJ erred in referencing Plaintiff's testimony from the 2011 administrative hearing: the ALJ explicitly mentioned that certain "remote" evidence, including 2011 hearing testimony, shows that Plaintiff's psychological issues were longstanding, even during time periods when she was working full-time. (AR 543.) Plaintiff has not established that the ALJ erred in considering evidence outside the time period for this purpose, namely considering whether Plaintiff's impairments were the primary reason that she was currently unemployed. *See* Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982) ("A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work.").

Because Plaintiff has not established error in the ALJ's assessment of the medical evidence

---

[2] On reply, Plaintiff disavows any intent to ask for a reweighing of the evidence, but instead asks for a remand to allow the ALJ to determine whether her impairments would exist without polysubstance abuse. Dkt. 16 at 2. She cites no authority requiring such a remedy under the circumstances of this case, and the Court is aware of none.

Plaintiff also contends on reply that "[i]t seems the ALJ merely ruled that if [Plaintiff] would stop taking drugs all of her impairments would go away." Dkt. 16 at 5. The ALJ's decision contains no such finding: instead, the ALJ found that even accounting for Plaintiff's substance use, her impairments were not disabling. (AR 549-50.)

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 7

or shown that the ALJ failed to comply with the court remand order, the Court rejects Plaintiff's first assignment of error.

### RFC

RFC is the most a claimant can do despite limitations and is assessed based on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). An RFC must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." 20 C.F.R. §§ 416.927(d)(2), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

Plaintiff challenges the ALJ's RFC assessment in several ways. First, she argues that the ALJ erred in failing to explain how Plaintiff's polysubstance abuse was accounted for in the RFC. Dkt. 14 at 14. Plaintiff has not shown that her polysubstance abuse caused any limitations that are not included in the RFC, however, and thus has not met her burden to show error in the ALJ's RFC. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.").

Next, Plaintiff argues that the ALJ erred in finding that if she stopped using drugs, her fibromyalgia symptoms would improve. Dkt. 14 at 14. She does not cite any part of the ALJ's decision where this finding is contained, and the Court's review of the decision does not reveal any such finding. On the contrary, the ALJ found that the record showed that Plaintiff failed to

comply with her fibromyalgia treatment, and instead focused on treating her pain with medication. (AR 542-43.) The ALJ also found that Plaintiff's reports of polysubstance withdrawal are similar to the symptoms she attributes to fibromyalgia. (AR 546.) Notably, the ALJ explained that her RFC assessment accounted for the effects of Plaintiff's substance use, and therefore the ALJ did not determine whether Plaintiff's substance use was material to her disability. (AR 550.) None of these findings, however, suggests that the ALJ interpreted the record to mean that if Plaintiff stopped using drugs, her fibromyalgia symptoms would improve.

Plaintiff also suggests that the ALJ erred in finding that Plaintiff failed to follow prescribed treatment because she had good cause for not following the recommended treatment, in light of her history of unsuccessful attempts at treatment and because of the great risk of addiction to opioids. Dkt. 14 at 14-15. As support for this argument, she cites SSR 18-3p, which provides a non-exhaustive list of examples of good cause for not following treatment recommendations. *See* SSR 18-3p, 2018 WL 4945641, at *5 (Oct. 2, 2018). Plaintiff does not make any attempt to cite evidence showing that she either unsuccessfully attempted treatment or that she avoided treatment due to the risk of opioid addiction. Dkt. 14 at 14-15. Plaintiff's conclusory allegation that good cause exists for her failure to comply with recommended treatment is insufficient to establish error in the ALJ's decision.

Lastly, Plaintiff argues that the ALJ erred in failing to comply with SSR 12-2p by failing to consider the longitudinal record, and instead focusing on only the "good days" rather than the "bad days" caused by her fibromyalgia. Dkt. 14 at 15-16 (citing 2012 WL 3104869 (Jul. 25, 2012)). Again, Plaintiff cites no evidence that supports this allegation. The Court will not comb through the record to find evidence that supports Plaintiff's arguments: Plaintiff has not met her burden to show error in the ALJ's RFC assessment, by failing to cite any evidence that she claims

the ALJ overlooked.

## Step five

At the 2014 administrative hearing, the ALJ asked the VE to identify jobs that a hypothetical claimant with Plaintiff's RFC could perform, and the VE identified two jobs. (AR 92-96.) The ALJ relied on this testimony in her 2019 decision, specifically the VE's testimony that Plaintiff could perform the representative occupations of marker and housekeeping cleaner. (AR 550-51.)

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). Pursuant to SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

In this case, Plaintiff contends that the ALJ erred in relying on the VE's testimony without further explanation because the jobs the VE identified are, as defined in the DOT, inconsistent with the RFC assessment: both jobs require frequent reaching, but the ALJ limited Plaintiff to occasional overhead reaching with the (non-dominant (AR 292)) left arm (AR 540). *See* DOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016) (marker job definition); DOT 323.687-014, 1001 WL 672783 (Jan. 1, 2016) (housekeeping cleaner definition). Neither the marker nor the housekeeping cleaner specifically requires overhead reaching with the non-dominant arm, however, and nothing in the marker job description suggests that this job would require frequent reaching overhead with the non-dominant arm. *See id*; *Gutierrez v. Colvin*, 844 F.3d 804, 807-09

(9th Cir. 2016); *Hulsey v. Saul*, 794 Fed. Appx. 659 (9th Cir. Feb. 19, 2020) ("Although the [DOT] notes that both the phlebotomist and gambling cashier occupations generally require frequent reaching, it does *not* indicate that those occupations require frequent *overhead* reaching or overhead reaching with the non-dominant arm. Thus, there is no apparent conflict with the [VE's] testimony and the [DOT] with respect to [plaintiff's] non-dominant-hand overhead reaching ability.").

The housekeeping cleaner job description does mention hanging drapes, however, which implies the need for at least some overhead reaching, although not necessarily at a more than occasional frequency. *See* DOT 323.687-014, 1001 WL 672783. But, even if this job is eliminated, the marker job exists in significant numbers in the national economy (142,000), and thus can solely support the ALJ's step-five finding. Accordingly, the Court finds no harmful error in the ALJ's step-five findings.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 20th day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge